IN THE UNITED STATES DISCTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

ANDREW T. MILLER,

      **Plaintiff,**

v.                                    **Case No. 2:23-cv-304**

WILLIAM K. MARSHALL, MEDINA PRUE,
LESLIE HILL, MISTY ADAMS,
RUSSELL MASTON, MELISSA KIMBLE,
JOHN DOES 1-10, and JANE DOES 1-10,

      **Defendants.**

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS OR, IN THE ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT

Comes now the Defendants, William K. Marshall, Commissioner of the West Virginia Division of Corrections and Rehabilitation, (hereinafter, "WVDCR"), Medina Prue, Leslie Hill, Misty Adams, Russell Maston, Melissa Kimble, "John Does 1-10," and "Jane Does 1-10," (collectively, "Defendants") all in their respective official capacities, by counsel, Jonathan M. Calhoun, Assistant Attorney General for the State of West Virginia, with their *Memorandum of Law* in Support of their *Motion to Dismiss* pursuant to Rule 12(b)(6) of the *Federal Rules of Civil Procedure* or, in the alternative, their *Motion for Summary Judgment* pursuant to *Rule 56 of the Federal Rules of Civil Procedure.*

STATEMENT OF FACTS

On April 3, 2022, Inmate Plaintiff Andrew Miller (hereinafter, "Plaintiff"), filed an action alleging that the Defendants are requiring the Plaintiff to complete the Residential Substance Abuse Treatment (hereinafter, "RSAT") program in order to be granted parole. *Complaint*, ¶¶ 129-133. The Plaintiff brought causes of action pursuant to Religious Land Use and Institutionalized Persons Act (hereinafter, "RLUIPA"), the Establishment Clause of the First

Amendment, Free Exercise Clause of the First Amendment, and Free Speech Clause of the First Amendment. *Complaint, ¶¶* 134-159.

The need for the Plaintiff to participate in the RSAT program was determined by way of his Level of Service/Case Management Inventory (LS/CMI) assessment. *Defendants' Exhibit No. 1.* He ultimately refused to complete the program, arguing that he is an atheist, and he objects to what he perceives to be a religious component to the RSAT program. Further, he also expressed dissatisfaction with the program and doubts about its effectiveness. *Defendants' Exhibit No. 9.*

On July 22, 2021, Defendant Medina Prue, RSAT Program Manager, wrote a letter to the Plaintiff acknowledging that the Plaintiff was an atheist and assuring the Plaintiff that the RSAT program was "not in place to force religion on anyone." *Defendants' Exhibit No. 2.* Said Defendant further wrote to the Plaintiff that "One of the first steps of Narcotics Anonymous is concerned with belief in a power higher than yourself. This acknowledgement that your addiction is more powerful than you and therefore something outside yourself must be capable of contributing to your recovery. Over time you will develop your own unique concept of higher power whether it be Nature (sic), evil spirits, existential freedom, laws of science, wizards, water, or humanity as a whole." *Defendants' Exhibit No. 2.*

Subsequently, on August 11, 2021, the Central Office Grievance Review, through Superintendent Aaron Westfall, wrote the Plaintiff. *Defendants' Exhibit No. 3.* This letter largely reiterated the aforesaid letter written by Defendant Prue, and added, in pertinent part, the following language: "The WVDCR does not promote any religion. However, we do promote moral rehabilitation. As in society we cannot shield anyone from any mention of spiritual issues. You have the ability to assign your ideas to anything taught in the RSAT program. Any

consequences from refusing programming will be a result of your personal decisions."
*Defendants' Exhibit No. 3*.  Further, the Plaintiff was given "A Humanist Alternative to AA's Twelve Steps," *Defendants' Exhibit No. 4*, to demonstrate that non-religious options for substance abuse treatment are available.

The WVDCR's policies concerning the RSAT program are set forth in WVDCR Policy Directive 501.00, *Defendants' Exhibit No. 5*.  Nothing in said document refers to an establishment, promotion, or practice of religion.  Further, the WVDCR provides "A Secular 12 Step Recovery Guide," *Defendants' Exhibit No. 6*, to further demonstrate that non-religious substance abuse treatment options exist within the RSAT program.

A review of the RSAT policy manual reveals no direct references to God or religion. *Defendants' Exhibit No. 8*.  The only reference whatsoever to anything which could be viewed as religious is listed in the duties of the "Motivation Crew," which includes as a responsibility on page 26 of said document to "(t)each new family members the Serenity Prayer and how it is used daily."  The "Serenity Prayer," though not specifically defined in the manual, is a non-specific affirmation which generally sets forth "God, grant me the serenity to accept the things I cannot change, the courage to change the things I can, and the wisdom to know the difference."  This could easily be converted to a secular statement be removing the reference to God or disregarded entirely.  Further, it is important to note that the very next sentence in the RSAT manual following the reference to the Serenity Prayer in the list of duties of the "Motivation Crew" is "(m)ust be open to other beliefs which may differ from their own," which would include the Plaintiff's atheism.  *Defendants' Exhibit No. 8*. It is also important to note that the "Motivation Crew" is a specific role in the RSAT unit and not one the Plaintiff would be required to maintain.

For example, the Plaintiff acknowledges that prior to leaving the RSAT program he was "Education Coordinator." *Complaint*, ¶ 60. This is a distinct responsibility from the "Motivation Crew," meaning he would not need to teach or participate in the Serenity Prayer. Further, nothing in the RSAT manual indicates that the Serenity Prayer must be recited. *Defendants' Exhibit No. 8.*

The Plaintiff has repeatedly refused to participate in the RSAT program, signing refusal documents on June 23, 2021, September 14, 2021, and May 28, 2022. However, despite Plaintiff's assertions that his refusal was for what he alleges is a religious element of the RSAT program, he wrote additionally that "…I doubt the value of the program, and the facility is a dump. The groups/meetings are a joke, I highly doubt they are helping anyone stay sober." *Defendants' Exhibit No. 9.*

LEGAL STANDARD

**1. Legal Standard for a Injunctive Relief**

The Plaintiff seeks a preliminary injunction in this matter. "Ordinarily, preliminary injunctions are issued to 'protect the status quo and to prevent irreparable harm during the pendency of a lawsuit ultimately to preserve the court's ability to render a meaningful judgment on the merits.'" *Perry v. Judd*, 471 F. App'x 219, 223 (4th Cir. 2012) (quoting *In re Microsoft Corp. Antitrust Litig.*, 333 F.3d 517, 525 (4th Cir. 2003)).

A party seeking a preliminary injunction must demonstrate that "(1) he is likely to succeed on the merits; (2) he is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in his favor; and (4) an injunction is in the public interest." *See Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7 (2008); *The Real Truth About Obama*, 575 F.3d 342 (4th Cir. 2009). All four factors of the above-quoted test must be met to justify this extraordinary relief. *Real Truth*, 575 F.3d at 347.

A preliminary injunction is an extraordinary remedy afforded prior to trial at the discretion of the district court that grants relief *pendente lite* of the type available after the trial. *See In re Microsoft Corp. Antitrust Litig.*, 333 F.3d 517, 524-26 (4th Cir. 2003); *see also De Beers Consol. Mines, Ltd. V. United States*, 325 U.S. 212, 220-21, 65 S. Ct. 1130, 80 L. Ed. 1566 (1945). Since a preliminary injunction temporarily affords essentially the relief that can be granted permanently after trial, the party seeking the preliminary injunction must demonstrate by "a clear showing" that, in addition to other factors, it is likely to succeed on the merits at trial. *Winter*, 129 S. Ct. at 376; *see also Mazurek v. Armstrong*, 520 U.S. 968, 972, 117 S. Ct. 1865, 138 L. Ed.2d 162 (1997) (per curiam). In *Winte*r, the United States Supreme Court rejected a standard that allowed the plaintiff to demonstrate only a mere "possibility" of irreparable harm because that standard was "inconsistent with our characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Id.* at 375-76.

The *Real Truth* decision emphasizes that the movant must make a clear showing that they are likely to be irreparably harmed, and particular attention must be paid to the public consequences in employing the extraordinary remedy of an injunction. The movant must show the harm to be "neither remote nor speculative, but actual and imminent." *Direx Israel, Ltd. v. Breakthrough Med. Group*, 952 F.2d 802, 812 (4th Cir. 1991) (citation omitted). Further, it has been held that courts should grant preliminary injunctive relief involving the management of correctional facilities only under exceptional and compelling circumstances. *See Taylor v. Freeman*, 34 F.3d 266, 269 (4th Cir. 1994); *see also Miles v. Bell,* No. 20-cv-2107, 2021 WL 229674, at *5 (D. Md. Jan. 22, 2021)

Further, a party seeking a permanent injunction must show that said party: "(1) …has suffered irreparable injury; (2) the available legal remedies are inadequate to compensate for that injury; (3) the balance of hardships between the plaintiff and defendant warrants an equitable remedy; and (4) the public interest would not be disserved by a permanent injunction." *Herrera v. Finan*, 176 F. Supp. 3d 549, 568 (D.S.C. 2016), *aff'd*, 709 F. App'x 741 (4th Cir. 2017) (citing *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006)). "The decision to grant or deny permanent injunctive relief is an act of equitable discretion by the district court[.]" *eBay Inc*., 547 U.S. at 391.

**2. Legal Standard for a Motion to Dismiss**

A motion to dismiss is considered pursuant to Rule 12(b)(6) of the Rules of Civil Procedure. "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, *ibid.,* a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do. Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545, 127 S. Ct. 1955, 1959, 167 L. Ed. 2d 929 (2007).

**3. Legal Standard for Summary Judgment**

A motion for summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. "One of principal purposes of summary judgment is to isolate and dispose of factually unsupported claims or defenses, and rule should be interpreted in way that allows it to accomplish this purpose." *Snowden By and Through Victor v. Connaught Laboratories, Inc.,* D.Kan.1992, 793 F. Supp. 1040.

ARGUMENT

**1. The Plaintiff's claim is without merit under RLUIPA because there is a secular option for completing the RSAT program, meaning his religious beliefs are not substantially burdened.**

The Plaintiff is not entitled to relief because a claim under RLUIPA requires that a substantial burden be placed upon his religious practice, or more accurately in the present case, his choice not to practice religion.  There is a secular option for the RSAT program, so the Plaintiff's claim must fail.  At best, from the Plaintiff's perspective, his claim is moot because there is a secular option for completing the RSAT program which does not place a substantial burden on the atheism of the Plaintiff.

The standard for a claim under RLUIPA has been clearly established:

Under Fourth Circuit precedent, the threshold showing is two-pronged: A prisoner must show (1) that he holds a sincere religious belief and (2) that his religious practice has been substantially burdened by the prison policy or practice. *Greenhill v. Clarke*, 944 F.3d 243, 253 (4th Cir. 2019). A substantial burden either puts pressure on a person to change his religious beliefs or puts that person to a choice between abandoning his religion or following his beliefs and losing some government benefit. *Lovelace v. Lee*, 472 F.3d 174, 187 (4th Cir. 2006).

*Firewalker-Fields v. Lee*, 58 F.4th 104, 114 (4th Cir. 2023)

The Defendants, for the purpose of the present motion, do not dispute that the Plaintiff is sincere in his continuing assertion that he is an atheist.  However, the Defendants dispute the second prong of the test and argue that the beliefs of the Plaintiff have not been substantially burdened by a correctional facility policy or practice.

The Plaintiff can complete the RSAT in a manner that does not promote religion.  As demonstrated by *Defendants' Exhibit No. 2* and *Defendants' Exhibit No. 3*, the WVDCR does not promote specific religious beliefs and conveyed that message directly to the Plaintiff.  The

7

Plaintiff was sent the secular "A Humanist Alternative to AA's Twelve Steps," attached as *Defendants' Exhibit No. 4*, as an example of the non-religious materials that are available in the RSAT program.  WVDCR Policy Directive 501.00, *Defendants' Exhibit No. 5*, sets forth in detail the purpose, philosophy, and protocols of the RSAT program.  Nothing therein sets forth anything concerning promoting a religious agenda.

Further, the Plaintiff has clearly not been required to make "…a choice between abandoning his religion or following his beliefs and losing some government benefit." *Firewalker-Fields*, 58 F.4th 104, 114. As set forth clearly in *Defendants' Exhibit No. 2*, the program merely requires an acknowledgment that addiction "…is more powerful than you and therefore something outside yourself must be capable of contributing to your recovery," "…whether it be Nature (sic), evil spirits, existential freedom, laws of science, wizards, water, or humanity as a whole."  *Id.*  This clearly does not advance a religious ideology and does not substantially burden the Plaintiff's atheistic beliefs. This is belief in a power greater than oneself, however one chooses to construe that term, is part of a system of recovery.

Additionally, the Supreme Court has written that RLUIPA is not elevated above institutional needs to maintain safety and order:

> We do not read RLUIPA to elevate accommodation of religious observances over an institution's need to maintain order and safety. Our decisions indicate that an accommodation must be measured so that it does not override other significant interests. In *Caldor,* the Court struck down a Connecticut law that "arm[ed] Sabbath observers with an absolute and unqualified right not to work on whatever day they designate[d] as their Sabbath." 472 U.S., at 709, 105 S.Ct. 2914. We held the law invalid under the Establishment Clause because it "unyielding[ly] weigh[ted]" the interests of Sabbatarians "over all other interests." *Id.*, at 710, 105 S.Ct. 2914.
>
> We have no cause to believe that RLUIPA would not be applied in an appropriately balanced way, with particular sensitivity to security concerns. While the Act adopts a "compelling governmental interest" standard, see *supra,* at 2118,

"[c]ontext matters" in the application of that standard. *See Grutter v. Bollinger,* 539 U.S. 306, 327, 123 S.Ct. 2325, 156 L.Ed.2d 304 (2003). Lawmakers supporting RLUIPA were mindful of the urgency of discipline, order, safety, and security in penal institutions. *See*, *e.g.*, 139 Cong. Rec. 26190 (1993) (remarks of Sen. Hatch). They anticipated that courts would apply the Act's standard with "due deference to the experience and expertise of prison and jail administrators in establishing necessary regulations and procedures to maintain good order, security and discipline, consistent with consideration of costs and limited resources." Joint Statement 16699 (quoting S.Rep. No. 103-111, at 10, U.S.Code Cong. & Admin.News 1993, pp. 1892, 1899, 1900).

*Cutter v. Wilkinson*, 544 U.S. 709, 722–23, 125 S. Ct. 2113, 2122–23, 161 L. Ed. 2d 1020 (2005) (internal footnote omitted)

While the Defendants are adamant in their position that the RSAT program does not place a substantial burden on the Plaintiff's ability to practice atheism, they further argue that to the extent the Court may find otherwise, that the WVDCR's compelling interest in ensuring that inmates receive necessary rehabilitation outweighs any minimal exposure to religious references which the Plaintiff may experience while incarcerated. The WVDCR has a compelling interest to both protect the public at large by providing inmates with appropriate rehabilitative programs and an equally strong interest in the inmates themselves receiving these programs to help them successfully reintegrate into society and avoid recidivism.

Further, the Plaintiff's own refusal documents demonstrate that his displeasure with the RSAT program is for more than what he claims is an infringement on his atheism. As referenced above, he wrote that "…I doubt the value of the program, and the facility is a dump. The groups/meetings are a joke, I highly doubt they are helping anyone stay sober." *Defendants' Exhibit No. 9.* This statement undercuts the Plaintiff's own claim that he is refusing to participate in RSAT based upon what he believes is the imposition of religion.

The motion to dismiss should be granted because, even if taken as true, the Plaintiff's allegations fail to set forth a claim that his atheism has been substantially burdened by the Defendants. The Plaintiff acknowledges that the Defendants communicated to him the availability of a secular option to the RSAT program.  The secular option is available to the Plaintiff, and it is his choice whether to avail himself of the opportunity.

In the alternative, the Defendants argue that their motion for summary judgment should be granted because there is no question of material fact as to the contents of the secular RSAT program, that the secular RSAT program is available to the Plaintiff, and that he chooses not to avail himself of the program.  The Defendants argue that the substance of the secular RSAT program and the WVDCR policy concerning the same clearly does not burden the religious beliefs, or choice not to be believe in religion or a deity, of the Plaintiff in any way.

**2. The Plaintiff's First Amendment claims also fail.**

The Plaintiff's claims made under the First Amendment fail for similar reasons as his claims pursuant to RLUIPA.  His allegations do not amount to a legitimate claim that his freedom to exercise his atheism has been violated.

When a party cannot demonstrate a substantial burden on the exercise of his religious beliefs under the strict scrutiny required by RLUIPA, such a claim also fails under the Free Exercise Clause of the First Amendment. *See Blake v. Rubenstein*, No. 2:08-cv-00906, 2016 WL 5660355, at *26 (Apr. 4, 2016) (citing *Shabazz v. Johnson*, 2015 WL 4068590 (E.D. Va. July 2, 2015) ("[w]here an inmate has not put forth sufficient evidence under RLUIPA to demonstrate a substantial burden on his religious exercise, his claim fails under the Free Exercise Clause of the First Amendment as well.") (Some citations omitted).

The Plaintiff cannot show a substantial burden of the exercise of his beliefs under RLUIPA, and his claim clearly fails under the Free Exercise Clause as well.

Further, the Plaintiff has failed to set forth a claim under the Establishment Clause.

> *Kennedy*[1] makes clear that under the Establishment Clause, historical analysis is "the rule rather than some exception." 142 S. Ct. at 2428. *See also Town of Greece*, 572 U.S. at 575-77, 134 S. Ct. 1811. So, in Establishment Clause cases, the plaintiff has the burden of proving a set of facts that would have historically been understood as an establishment of religion. That requires proving both a set of facts, like in all litigation, and proving that those facts align with a historically disfavored establishmentarian practice.

*Firewalker-Fields.*, n.7.

Generally, accommodations for specific religious beliefs in the context of a correctional center do not constitute the establishment of religion where they are neutral and non-coercive. *See also Lee v. Weisman*, 505 U.S. 577, 587 (1992) (the government "may not coerce anyone to support or participate in religion or its exercise.")

The letter written by Defendant Prue to the Plaintiff, the policies of the secular RSAT program, and Policy Directive 512.00 make clear that the WVDCR does not seek to promote or endorse religion through the RSAT program.  Rather, said program merely seeks an acknowledgment by an individual of an authority greater than oneself, and makes clear that this does not have to be a religious deity.  Any reasonable person would acknowledge this point of view; the mere fact that one recognizes that they are subject to the laws of the State of West Virginia and the United States of America is essentially an acknowledgement that one is subject to an authority greater than the self.  It would defy logic to equate this basic principle of living in a society of laws as an establishment of religion.

---

[1] *Kennedy v. Bremerton School Dist.*, 142 S. Ct. 2407 (2022)

The Plaintiff's First Amendment Free Speech claims fail as well.  He alleges that his freedom of speech was violated because he was forced to distribute materials he perceived to be promoting religion while in his role as Education Coordinator in the RSAT program and that he was forced to make the choice between "...delivering the government's preferred message or forfeit his eligibility of parole." *Complaint*, ¶ 156.  This specific allegation is a vast oversimplification of the Plaintiff's claims that undercuts the legitimacy of his own case. Nothing in the RSAT manual requires the Plaintiff to distribute religious materials to complete the program, and the WVDCR has repeatedly and consistently maintained to the Plaintiff that it does not endorse any religion or religious beliefs. The Plaintiff has repeatedly refused to participate in RSAT.  *Defendants' Exhibit No. 9.*

The United States Supreme Court has recognized the distinctions between the Free Exercise Clause and Free Speech Clause of the First Amendment:

> The First Amendment protects speech and religion by quite different mechanisms. Speech is protected by ensuring its full expression even when the government participates, for the very object of some of our most important speech is to persuade the government to adopt an idea as its own. *Meese v. Keene*, 481 U.S. 465, 480–481, 107 S.Ct. 1862, 1870–1871, 95 L.Ed.2d 415 (1987); *see also Keller v. State Bar of California*, 496 U.S. 1, 10–11, 110 S.Ct. 2228, 2234–2235, 110 L.Ed.2d 1 (1990); *Abood v. Detroit Bd. of Ed.*, 431 U.S. 209, 97 S.Ct. 1782, 52 L.Ed.2d 261 (1977). The method for protecting freedom of worship and freedom of conscience in religious matters is quite the reverse. In religious debate or expression the government is not a prime participant, for the Framers deemed religious establishment antithetical to the freedom of all. The Free Exercise Clause embraces a freedom of conscience and worship that has close parallels in the speech provisions of the First Amendment, but the Establishment Clause is a specific prohibition on forms of state intervention in religious affairs with no precise counterpart in the speech provisions

*Lee v. Weisman*, 505 U.S. 577, 591, 112 S. Ct. 2649, 2657, 120 L. Ed. 2d 467 (1992).

The above-quoted text reveals that the Plaintiff's cause of action premised on a violation of this right of Freedom of Speech is misplaced. Nothing in the *Complaint* alleges that the Plaintiff has been restricted from participating in the expression of his beliefs.  Even if his

allegation is taken as true, distributing course materials is not akin to a restriction on the

Plaintiff's speech or an endorsement of those materials by the Plaintiff. Nothing alleged here

prevents the Plaintiff's "full expression" of his speech. *Id*. Quite simply, "Count IV" of the

*Complaint* does not allege a violation of the Plaintiff's Freedom of Speech.

      Further, it should be noted that parole itself is not a constitutional right. The Fourth

Circuit has written as follows:

> There is no constitutional or inherent right of a convicted person to be
> conditionally released before the expiration of a valid sentence." *Greenholtz v.*
> *Nebraska Penal Inmates,* 442 U.S. 1, 7, 99 S.Ct. 2100, 2104, 60 L.Ed.2d 668
> (1979). This is because "given a valid conviction, the criminal defendant has been
> constitutionally deprived of his liberty." *Id.* at 7, 99 S.Ct. at 2104, *quoting*
> *Meachum v. Fano,* 427 U.S. 215, 224, 96 S.Ct. 2532, 2538, 49 L.Ed.2d 451
> (1976).
>
> The absence of a constitutional right to parole means that a state has no duty to
> establish a system of parole, *id.,* and if it chooses to do so, federal courts should
> allow a state's parole authorities "a wide range for experimentation and the
> exercise of discretion." *Franklin v. Shields,* 569 F.2d 784, 800 (4th Cir.1977) (en
> banc), *cert. denied,* 435 U.S. 1003, 98 S.Ct. 1659, 56 L.Ed.2d 92 (1978).
> "Moreover, to insure that the state-created parole system serves the public-interest
> purposes of rehabilitation and deterrence, the state may be specific or general in
> defining the conditions for release and the factors that should be considered by the
> parole authority." *Greenholtz,* 442 U.S. at 7–8, 99 S.Ct. at 2104.
>
> Most parole decisions involve a considerable degree of discretion. Hence, parole
> authorities must investigate and weigh "numerous factors including [the inmate's]
> history, mental and physical condition, attitude, and compatibility with the
> 'interests of society.'"

*Vann v. Angelone*, 73 F.3d 519, 521–22 (4th Cir. 1996).

      The State of West Virginia, using its "considerable degree of discretion," has determined

that the Plaintiff should complete the RSAT program prior to being released on parole. *Id*.

While the Defendants do not dispute that it would be unconstitutional and a violation to force an

inmate to complete a program that is overtly religious to be granted parole, that is clearly not the

situation in the present case. The RSAT program is not religious in nature, and the Plaintiff has

failed to properly allege a cognizable case pursuant to either RLUIPA or the First Amendment. Further, there is no question of material fact that all the policies of the RSAT program are non-religious in nature.

Additionally, to the extent that the Plaintiff alleges injury in the form of not being granted parole, he fails to state a claim upon which relief can be granted. The West Virginia Parole Board (hereinafter, "Parole Board") decides whether to grant parole to eligible inmates, and this authority and the eligibility of inmates for parole is controlled by statute. *See West Virginia Code § 62-12-13*. "The decision to grant or deny parole is a discretionary evaluation to be made by the West Virginia Board of Probation and Parole. However, such a decision shall be reviewed by this Court to determine if the Board of Probation and Parole abused its discretion by acting in an arbitrary and capricious fashion. *Tasker v. Mohn*, 267 S.E.2d 183, 190 (W. Va. 1980)." Syl. Pt. 3, *Rowe v. Whyte*, 167 W. Va. 668, 668, 280 S.E.2d 301, 301 (1981). The Parole Board ultimately has discretion to grant or deny parole. The Parole Board are not defendants in this matter, and it is not alleged they acted in an arbitrary and capricious fashion. Thus, to the extent the Plaintiff complains of a failure to be granted parole, he has failed to state a claim upon which relief can be granted as to the Defendants in the case *sub judice*.

Finally, the Plaintiff is not entitled to relief because, by his own words, for reasons entirely independent of his RLUIPA and First Amendment claims, he does not want to complete RSAT. He made clear in his May 28, 2022, refusal documents that he does not believe RSAT is effective, and that groups and meetings are a "joke.' *Defendants' Exhibit No. 9*. The Plaintiff's own words indicate that he does not want to participate in RSAT for reasons having nothing to do with his allegations involving religion, essentially rendering his entire claim in the case *sub judice* moot. He can choose not to participate in RSAT if he believes it is not effective, but he

also cannot enjoy the benefits of whatever positive consideration the Parole Board may give RSAT completion by virtue of this choice.

**3.  The Plaintiff's motion for a preliminary injunction should be denied because there is no likelihood of success on the merits of his underlying claim.**

No preliminary injunction relief, or any injunctive relief whatsoever, should be granted in this matter because the Plaintiff's underlying claim cannot succeed on the merits.  He has failed to set forth a claim upon which relief can be granted under RLUIPA or the First Amendment, so he clearly is not entitled to injunctive relief.  The Plaintiff cannot satisfy any of the four factors of the *Real Truth* test, set forth hereinbefore, so no injunctive relief should be granted in this matter.

The first factor of the test requires a likelihood of success on the merits.  The Defendants have argued extensively that this claim is without merit, and therefore the Plaintiff fails the first part of the *Real Truth* test.

The Plaintiff's claim does not meet the second factor, either. There is no likelihood of irreparable hard because, quite simply, there is no harm being suffered by the Plaintiff.  He has the opportunity to complete the RSAT program in a secular manner and have his success or failure in said program judged on its merits by the Parole Board.  There is no harm.

Further, the third prong of the test is not satisfied by the Plaintiff's claim because the "balance of equities" is not in his favor.  The United States Supreme Court has written as follows concerning the balance of competing equities:

> "(Courts) must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Amoco Production Co.,* 480 U.S., at 542, 107 S.Ct. 1396. "In exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Romero–Barcelo,* 456 U.S., at 312, 102 S.Ct. 1798; *see also Railroad Comm'n of Tex. v.*

*Pullman Co.,* 312 U.S. 496, 500, 61 S.Ct. 643, 85 L.Ed. 971 (1941).

*Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24, 129 S. Ct. 365, 376–77, 172 L. Ed. 2d 249 (2008).

      An injunction is an extraordinary remedy, and the Plaintiff has failed to demonstrate that the equities at play in this matter justify him receiving such relief.  He has the option of completing the secular RSAT program which does not require him to recognize in deity or religious beliefs. Requiring him to do so does not place any substantial burden on the Plaintiff. However, requiring the WVDCR to change its rehabilitation programming to accommodate the Plaintiff would have serious adverse effects. The WVDCR would have its statutorily granted ability to determine the rehabilitative needs of its inmates and residents adversely affected in a situation where the Plaintiff has not suffered any cognizable harm. The public consequences of this precedent would be substantial and negatively impact the WVDCR's ability to carry out one of its most important functions: the rehabilitation of inmates prior to their release.

      The fourth prong of the *Real Truth* is not satisfied for similar reasons.  An injunction is not in the public interest.  Further, the Defendants argue that it is actually in the best interest of the Plaintiff himself to complete the secular RSAT program which is designed to facilitate his rehabilitation.

      The United States Supreme Court has also written as follows concerning the deference given to the judgment of corrections professionals:

> As *Overton* (summarizing pre-*Turner* case law) pointed out, courts owe "substantial deference to the professional judgment of prison administrators." 539 U.S., at 132, 123 S.Ct. 2162. And *Turner* reconciled these principles by holding that restrictive prison regulations are permissible if they are " 'reasonably related' to legitimate penological interests," 482 U.S., at 87, 107 S.Ct. 2254, and are not an " 'exaggerated response' " to such objectives…

*Beard v. Banks*, 548 U.S. 521, 528, 126 S. Ct. 2572, 2578, 165 L. Ed. 2d 697 (2006).

The officials of the WVDCR have conducted the relevant assessments and determined that the Plaintiff needs to complete the RSAT program.  This is clearly "reasonably related" to "legitimate penological interests," and the fact a secular option for completing the RSAT program exists removes any burden upon the Plaintiff and his beliefs.  The Plaintiff's completion of the RSAT program would benefit the Plaintiff himself by assisting him in having the tools to successfully reintegrate into society and avoid recidivism.  Further, the Plaintiff receiving the rehabilitation he requires serves a much broader public interest, because the success of incarcerated individuals following their release benefits society as a whole.

The Plaintiff should be free from the imposition of religion in the programs he participates in while incarcerated, and the Defendants have demonstrated that he has available to him the opportunity to complete the necessary programs without having to express or exercise beliefs he does not possess. However, to the extent that the Plaintiff is seeking to avoid necessary substance abuse programming in general, the WVDCR argues that it is not in his best interest or the best interest of public policy for him to be released without participation in the secular RSAT program.  The WVDCR wants to ensure he receives the necessary rehabilitation to be successful once he is released.

The Plaintiff is entitled to no injunctive relief.  His underlying claim fails to set forth a claim upon which relief can be granted and is not meritorious.  This alone would preclude the awarding of injunctive relief.  However, even putting this aside, the Plaintiff cannot meet any of the four factors of the *Real Truth* test which are required for the issuance of an injunction.

## CONCLUSION

This matter should be dismissed because the Plaintiff fails to state a claim which demonstrates his ability to adhere to his atheistic beliefs have been infringed upon in any way.

He has been given the opportunity to participate in a secular substance abuse treatment plan and has refused to do so. The secular RSAT program does not promote any religion, a fact that has been clearly communicated to the Plaintiff by the WVDCR and said program does not place a burden on the Plaintiff's right to practice atheism.

Additionally, the Plaintiff is clearly entitled to no injunctive relief.  His underlying claim fails, so there is no way he can satisfy the *Real Truth* four-factor test.

WHEREFORE, the WVDCR respectfully requests that this Court deny the relief sought by the Plaintiff and dismiss this matter or, in the alternative, grant the Defendants' motion for summary judgment.  Further, to the extent this matter may not be disposed of by way of dismissal or summary judgment, the Defendants ask the Court to deny the Plaintiff's requested injunctive relief.

Respectfully submitted,

**WILLIAM K. MARSHALL, MEDINA PRUE,
LESLIE HILL, MISTY ADAMS,
RUSSELL MASTON, MELISSA KIMBLE,
JOHN DOES 1-10, and JANE DOES 1-10,**

By counsel,

PATRICK MORRISEY
ATTORNEY GENERAL

**/s/ Jonathan M. Calhoun_____**
Jonathan M. Calhoun (WVSB #11134)
Assistant Attorney General
1900 Kanawha Blvd., East
Building 1, Suite W-400
Charleston, WV  25305
Telephone: (304) 558-6828
jcalhoun@wvago.gov
*Counsel for Defendants*

IN THE UNITED STATES DISCTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

ANDREW T. MILLER,

      **Plaintiff,**

v.                                         **Case No. 2:23-cv-304**

WILLIAM K. MARSHALL, MEDINA PRUE,
LESLIE HILL, MISTY ADAMS,
RUSSELL MASTON, MELISSA KIMBLE,
JOHN DOES 1-10, and JANE DOES 1-10,

      **Defendants.**

## CERTIFICATE OF SERVICE

      I, Jonathan M. Calhoun Assistant Attorney General and counsel for Defendants, do hereby certify that on April 26, 2023, I electronically filed the foregoing **"DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS OR, IN THE ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT"** with the Clerk of Court using the CM/ECF system and that by virtue of such electronic filing, a true copy thereof was duly served upon Plaintiff's Counsel, CM/ECF participants, addressed as follows:

                               Geoffrey T. Blackwell, Attorney at Law
                               Lydia C. Milnes, Attorney at Law
                               Leslie M. Nash, Attorney at Law

                               **/s/ Jonathan M. Calhoun**
                               _____
                               Jonathan M. Calhoun, (WVSB #11134)
                               Assistant Attorney General
                               1900 Kanawha Blvd, East
                               Building 1, Room 400-West
                               Charleston, WV 25301
                               Phone: (304) 558-6830
                               Email: jcalhoun@wvago.gov